IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

PAUL KENNER,

Defendant.

4:16CR3085

FINDINGS AND
RECOMMENDATION

This matter is before the court on Defendant's Motion to Dismiss, (Filing No. 7) and the subsequent amendment thereto, (Filing No. 20). For the reasons set forth below the motions should be denied.

BACKGROUND

The Valentine National Wildlife Refuge (VNWR) is located in Cherry County, Nebraska. It was created by executive order in 1935 and is part of the National Wildlife Refuge system. As such, the VNWR is administered by the United States Department of the Interior, U.S. Fish and Wildlife Services and is home to a variety of plants and wildlife.

Certain areas of the VNWR are made available periodically to area ranchers for livestock grazing purposes. In exchange for grazing rights, a cattle rancher can pay a fee to the VNWR. One such area is designated as Unit 35C. A landowner other than Defendant has contracted with the VNWR to graze his or her livestock on Unit 35C. Defendant has not contracted with the VNWR for grazing rights on Unit 35C and has paid no money to do so. Unit 35C is surrounded on three sides by land owned by Defendant.

On October 8, 2015, employees of the VNWR found approximately 400 head of Defendant's cattle grazing in Unit 35C.   There were also six mineral tubs scattered around a portion of Unit 35C.   The mineral tubs were not the property of the VNWR. From the cattle tracks on the property leading to Defendant's property, the VNWR presumed the cattle belonged to Defendant.   The refuge manager contacted Defendant and instructed him to remove his cattle from the VNWR.   The next day the cattle and the mineral tubs had been removed from Unit 35C.

Two agents from the US Fish & Wildlife Service visited Defendant on October 28, 2015 to discuss the October 8, 2015 incident.   Defendant allegedly stated he placed cattle on Unit 35C to graze with the hopes of reducing or removing the risk of wildfires on his property.   (Filing No. 14 at CM/ECF p. 2-3).   Defendant allegedly stated the cattle had been grazing on Unit 35C for approximately 10 days.   (Filing No. 14 at CM/ECF p. 3). The United States filed an Information against Kenner on June 28, 2016 charging him with four counts related to the October 2015 grazing incident.   Defendant moved to dismiss the information.   (Filing No. 7).   The U.S. subsequently filed as superseding information again, asserting the following four counts:

> I.      Kenner did permit approximately 400 head of cattle to enter upon the VNWR and to roam at large without authorization to do so.
>
> II.     Kenner traveled in and used a motorized vehicle on the VNWR.
>
> III.    Kenner disturbed, injured, and destroyed plants on the VNWR.
>
> IV.     Kenner conducted cattle grazing on the VNWR without authorization to do so.

Defendant has moved to dismiss counts I, II, and IV.   In so moving, Defendant alleges the regulations on which the counts are based represent an unconstitutional delegation of Congress's authority.

2

ANALYSIS

The National Wildlife Refuge System Administration Act of 1966 (16 U.S.C. §§ 668dd-668ee) ("the Act") brought all of the nation's wildlife refuges under the umbrella of a unified system.   The Act sets forth numerous goals and missions for the wildlife refuge system.   See 16 U.S.C. § 668dd.   The expressed purposes of the Act include the conservation of "fish, wildlife, . . .   all lands, waters and interests therein administered by the Secretary as wildlife refuges."   16 U.S.C. § 668dd(a)(1).   The Act instructs the Secretary to "ensure that the biological integrity, diversity, and environmental health of the System are maintained for the benefit of present and future generations of Americans."   16 U.S.C. § 668dd(a)(4)(b).   The Act further authorizes the Secretary of the Interior to issue regulations to carry out the purposes of the Act.   16 U.S.C. § 668dd(b)(5).

Section 16 U.S.C. § 668dd(c) details prohibited and permitted activities on the lands that comprise National Wildlife Refuge System and expressly provides: "No person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, in any area of the System . . . or enter, use, or otherwise occupy any such area for any purpose."   16 U.S.C. § 668dd(c).   The regulations prohibit certain activities on a national wildlife refuge, including the placement of cattle (50 C.F.R. §26.21); traveling in or use of any motorized vehicle except on designated routes of travel (50 C.F.R. § 27.31); disturbing, injuring, or damaging plants (50 C.F.R. § 27.51); and conducting a commercial enterprise (50 C.F.R. § 27.97).   The Act establishes penalties for "knowingly" or "otherwise" failing to comply with "any of the provisions of th[e] Act or any regulations issued thereunder."   16 U.S.C. § 668dd(f)(1-2); 50 C.F.R. § 28.31.

Defendant argues the portions of the Act and the corresponding regulations implicated in this case are unconstitutional. Specifically, Defendant asserts he is facing charges based on regulations which were promulgated through an unconstitutional delegation of law-making authority from Congress to the Department of the Interior.

Pursuant to Article I, section I of the United States Constitution: "All legislative Powers herein granted shall be vested in a Congress of the United States." That is, Congress is "not permitted to . . . transfer to others the essential legislative functions with which it is thus vested." Panama Ref. Co. v. Ryan, 293 U.S. 388, 421 (1935). That is not to say all delegations of legislative authority are impermissible. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is direct to conform, such legislative action is not a forbidden delegation of legislative power.'" Mistretta v. United States, 488 U.S. 361, 372 (1989)(quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928)). "Congress provides an intelligible principle 'if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" United States v. Kuehl, 706 F.3d 917, 920 (8th Cir. 2013)(quoting Am. Power & Light Co. v. Sec. & Exch. Comm'n, 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946)).

The United States Supreme Court has rarely invalidated laws on delegation grounds. In contrast, the Court has approved broad delegations of powers by Congress under a number of different statutory schemes and acts. See Mistretta v. United States, 488 U.S. 361 (1989); Amer. Power & Light Co., 329 U.S. at 105 (upholding delegation of authority to Securities and Exchange Commission to prevent unfair or inequitable distribution of voting power among security holders); Yakus v. United States, 321 U.S. 414, 426 (1944) (upholding delegation to Price Administrator to fix commodity prices that would be fair and equitable, and would effectuate purposes of Emergency Price

Control Act of 1942); FPC v. Hope Natural Gas Co., 320 U.S. 591, 600 (1944) (upholding delegation to Federal Power Commission to determine just and reasonable rates); National Broadcasting Co. v. United States, 319 U.S. 190, 225-226 (1943) (upholding delegation to Federal Communications Commission to regulate broadcast licensing "as public interest, convenience, or necessity" require); see also United States v. Brown, 364 F.3d 1266 (4th Cir. 2004) (upholding National Park Service regulations as a valid delegation of Congressional power); United States v. Kuehl, 706 F.3d 917 (8th Cir. 2013) (upholding delegation of the determination of retroactivity of the Sex Offender Registration and Notification Act to the Attorney General); United States v. Rinaudo, 684 F. Supp. 2d 675 (E.D.N.C. 2010) (finding a regulation banning nudity on a national wildlife refuge was consistent with the purpose of the National Wildlife Refuge Act – promoting recreational enjoyment of wildlife refuge property).

Here, Defendant argues the Act impermissibly delegates legislative function to the Secretary of the Interior.   Specifically, he argues "the policy of Congress is not intelligible as it applies in the context of a remote site involving 7.5 miles of shared boundary fence with the Nebraska rancher, and in circumstances in which the rancher is dependent on personnel of the United States to fix the fence in order to avoid violation of the criminal laws charged against Mr. Kenner."   Filing No. 8 at CM/ECF p. 11, ¶ 21.

The express purpose of the Act is to promote the conversation of wildlife refuges and "ensure that the biological integrity, diversity, and environmental health of the System are maintained for the benefit of present and future generations of Americans." 16 U.S.C. § 668dd(a)(4)(b).   The Act forbids any person from disturbing, injuring, destroying, or possessing "any real or personal property of the United States, including natural growth, in any area of the System . . . or enter, use, or otherwise occupy any such area for any purpose . . . unless such activities are permitted under subsection (d) [of the Act] or by express provision of the law, proclamation, Executive order, or public land

order . . . ." 16 U.S.C. § 668dd(c). The Act provides the Secretary of the Interior with the authority to promulgate regulations to carry out the purposes of the Act. 16 U.S.C. § 668dd(b)(5). Thus, Congress has clearly delineated the general policy of the Act, the public agency which is to apply it, and the boundaries of the delegated authority.

The regulations at issue meet the goals of the Act and are well within the boundaries of achieving those goals. Count I is based on 50 C.F.R. § 26.21, which prohibits trespassing onto national wildlife refuge property and permitting domestic animals including cattle from entering a national wildlife refuge or roaming on a refuge. This regulation clearly advances the goal of preserving refuge property, wildlife, and specifically preventing the possible destruction of natural growth. Likewise, the regulations preventing the use of motorized vehicles, the prohibition against destroying plants, and the prohibition against operating a commercial business all fit squarely within the Act's purpose of preserving wildlife refuge land and are within the authority delegated to the Secretary of the Interior by Congress.

Defendant appears to be challenging whether the fence between his property and the subject property was properly maintained by the Government. The Government contends the fence was well maintained. This is a question of fact, specific to Defendant's case, and has no bearing on the delegation issue. It is a point to be argued at trial and does not affect the analysis of whether the Act and regulations represent an appropriate delegation of authority.

Defendant also briefly argues the regulations at issue in Count I are void for vagueness. A statute or regulation is void for vagueness if it either "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." Roberts v. United States Jaycees, 468 U.S. 609, 629 (1982). "Void for vagueness simply means that

criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002). To avoid being deemed void for vagueness, the statute or regulation "must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." United States v. Bamberg, 478 F.3d 934, 937 (8th Cir. 2007).

The Eighth Circuit addressed a very similar regulation in United States v. Larson, 746 F.2d 455, 456 (1984). In Larson, the defendant challenged 36 C.F.R. § 261.7(a) as being unconstitutionally vague. That regulation prohibits individuals from "[p]lacing or allowing unauthorized livestock to enter or be in the National Forest System and other lands under Forest Service control." 36 C.F.R. § 261.7(a). The court found the language of the regulation was not void for vagueness because the regulation "clearly" identified the prohibited actions. Larson, 746 F.2d at 456.

Defendant argues the term "permit" is vague, rendering the regulation void. The court disagrees. A person of common intelligence could reasonably understand what 50 C.F.R. §26.21 prohibits – allowing or tolerating the entry and/or roaming of cattle on refuge property. Defendant is accused of doing exactly that. While Defendant may argue the facts of this case are different than what the government has presented, his argument that the statute is so vague that a person of common intelligence could not reasonably understand the prohibited conduct is simply not persuasive.[1]

---

[1] Defendant also suggests, without drawing any real connection to his vagueness argument, that the government did not address the fact that this case "involve[s] wide open spaces, 7.5 miles of government-built and maintained border fences, [and] significant remoteness." Filing No. 21 at CM/ECF p. 4. The court sees no connection between these facts and Defendant's argument of vagueness, nor does Defendant attempt to make one.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge,   pursuant to 28 U.S.C. § 636(b), that Defendant's motion to dismiss (Filing No. 7) and the amendment thereto (Filing No. 20) be denied in their entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 12th day of October, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.